**[This opinion has been published in *Ohio Official Reports* at 68 Ohio St.3d 497.]**

THE STATE EX REL. DISPATCH PRINTING COMPANY, APPELLEE, *v*. LIAS, JUDGE, ET AL., APPELLANTS.

**[Cite as *State ex rel. Dispatch Printing Co. v. Lias*, 1994-Ohio-335.]**

*Juvenile court—Closure hearing warranted, when—Requirements for closed closure hearing—Court's finding of closure or nonclosure of proceeding is a final order subject to appeal—Persons present and participating at in camera inspection to determine appropriateness of closed closure hearing prohibited from disseminating information determined to be excluded from public disclosure until competent authority determines such information may be released.*

1.  Unless summarily denied, a motion of a party to a juvenile court proceeding ("proceeding") requesting that the proceeding be closed to the press and public, requires the juvenile court to conduct an evidentiary hearing ("closure hearing") to determine whether closure of the proceeding is warranted.  Closure of the proceeding may be warranted upon a showing by the juvenile court that it has followed the standards set forth in *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph three of the syllabus, and that there are no reasonable alternatives to closure.

2.  When a party to a juvenile court proceeding asserts that a closure hearing itself should be closed, the juvenile court must conduct an in camera inspection to determine if closure of the closure hearing is appropriate.  Any party urging the closure of a proceeding must present to the juvenile court, for its *in camera* inspection, a written or recorded summary of any testimony sought to be excluded from the public domain.  Such summary must contain sufficient information for the juvenile court to make an informed decision,

      pursuant to the standards set forth in *T.R.*, as to whether any or all of the testimony sought to be excluded from public disclosure should be excluded.

3.   If an *in camera* inspection is required, the inspection must be conducted with counsel for the parties, the press and the public, if any, present and participating, and such participation is to include a review by counsel of the summary of testimony sought to be excluded.

4.   At the conclusion of the *in camera* inspection, counsel must be provided with an opportunity to object to the court's finding. Upon objection by counsel, the court's finding of closure or nonclosure of the proceeding is a final order subject to appeal as affecting a substantial right in a special proceeding. Testimony which is the subject of an objection shall be sealed and, as sealed, preserved as part of the record for possible appellate review. Unless and until an appeal is taken, the juvenile court proceeding may continue at the court's convenience.

5.   Those persons present and participating at the *in camera* inspection are prohibited, under penalty of contempt, from disseminating any information determined by the juvenile court to be excluded from public disclosure, unless and until it is determined by competent authority that such information may be released to the public.

      (No. 93-326—Submitted January 4, 1994—Decided March 23, 1994.)

      Appeals from the Court of Appeals for Franklin County, No. 93AP-42.

_____

      **{¶ 1}** These appeals stem from an action filed by appellant, Franklin County Children Services Board ("FCCS"), seeking permanent custody of two minor children. Various events and circumstances leading up to and surrounding this case have been the subject of considerable publicity.

      **{¶ 2}** The permanent custody proceeding was scheduled to begin on January 12, 1993 in the Franklin County Court of Common Pleas, Division of

Domestic Relations, Juvenile Branch. However, counsel for FCCS moved to have the custody proceeding closed to the press and public. Consequently, a hearing was convened ("closure hearing") before respondent-appellant, Judge Katherine S. Lias, to determine whether the custody proceeding should be closed.

{¶ 3} At the onset of the closure hearing, Judge Lias noted that before her was a request by a local television station to videotape the permanent custody proceeding and the closure hearing. At this time, counsel for FCCS also moved to have the closure hearing closed to the press and public. As a result, Judge Lias invited argument from counsel present as to why portions of the closure hearing should not be videotaped. Judge Lias also noted that "* * * there is certainly less compelling reason not to televise this closure hearing than might be in the actual permanent commitment proceedings."

{¶ 4} Arguing first, counsel for FCCS claimed that some of the testimony "will be part of the psychological information that will be coming forth in the actual permanent custody hearings along with an extensive family history with the parents." Counsel for FCCS stated that he intended to call two witnesses—a caseworker assigned to the children and a psychologist who provided a report on the parents. Counsel asserted that the evidence he intended to elicit from these witnesses was confidential and/or so sensitive that it could be harmful to the children if released into the public domain. The guardian *ad litem* for the children, K. Clarke Fahnenbruck, also an appellant herein, agreed with FCCS that the closure hearing should be closed.

{¶ 5} Counsel for the Columbus Dispatch and counsel for Virginia Henry opposed FCCS's request to close the closure hearing. Virginia Henry is the mother of the two children in question. The Columbus Dispatch is a newspaper published by relator-appellee, Dispatch Printing Company ("the Dispatch"). There was much discussion between counsel present at the hearing and Judge Lias regarding the applicability of *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, certiorari denied

*sub nom. Dispatch Printing Co. v. Solove* (1990), 498 U.S. 958, 111 S.Ct. 386, 112 L.Ed.2d 396 ("*T.R.*"), to this situation. The underlying tenor of the arguments posited by the Dispatch and Henry's attorney was that this court's ruling in *T.R.* did not require that this hearing (the closure hearing) be closed.

{¶ **6**} Following counsel's arguments, Judge Lias granted, in part, FCCS's motion to close the closure hearing. Judge Lias granted the motion with the condition that "* * * if you need to have testimony that will directly state psychological conditions, intimate things that would be contained in the family file of this case, which are confidential records, at that point, I will say 'turn your cameras * * * [off] people, I'm going to need to close the courtroom for that particular, specific piece.' Other than that, I want to keep the courtroom open * * *."

{¶ **7**} The closure hearing proceeded and counsel for FCCS called as his first witness Martha Sapp, the caseworker assigned to the children. Initially, Sapp testified about her educational background and employment history. Counsel then informed the court that he would "be getting into that sensitive area" and that he would be asking "specific questions regarding the psychologicals, * * * [and] extensive family history." Following a bench conference, Judge Lias closed the courtroom, excusing all in attendance except for the parties and counsel involved in the hearing. Thereafter, Sapp was asked to describe the "type" of "family history" expected to be presented at the permanent custody proceeding with respect to the fitness of Henry and the father of the children as parents. Sapp then testified about Henry's troubled past. On cross-examination, Sapp acknowledged that everything she had testified to had already been disseminated to the public. Sapp noted that she had previously read about Henry's past in "the newspaper." It appears that portions of Henry's family history have been the subject of extensive media interest. In fact, on December 23, 1992, the Dispatch published an article about Henry's ongoing confrontation with FCCS. This article contained, among other

things, matters concerning Henry's past. Apparently, much of this information was volunteered to the Dispatch by Henry. Further, it appears that Henry sought publicity through the Dispatch as a means of confronting FCCS and reinforcing allegations that her children were mistreated while in a foster home.

{¶ 8} Subsequent to this portion of Sapp's testimony, the courtroom was reopened and those who were previously asked to leave were permitted to return. Sapp resumed her testimony. Another employee of FCCS also testified.

{¶ 9} The following day (January 13, 1993), the Dispatch filed a complaint in the Court of Appeals for Franklin County against Judge Lias, requesting that the court of appeals grant it a writ of prohibition or, alternatively, a writ of mandamus. The Dispatch sought to prohibit Judge Lias from enforcing her directive to close the closure hearing or, in the alternative, an order directing her to vacate that ruling. The Dispatch also filed a motion with the court of appeals for an emergency stay of the closure ruling.

{¶ 10} On the same day, the court of appeals conducted a hearing on these matters. The court of appeals permitted FCCS, Fahnenbruck and Henry to intervene in the action. The court of appeals denied the *Dispatch's* request for an emergency stay, but issued a writ of prohibition precluding Judge Lias from proceeding with the closure hearing until such time as she vacated her order closing that hearing.

{¶ 11} The cause is now before this court upon appeals as of right.

_____

*Jones, Day, Reavis & Pogue*, *John W. Zeiger*, *Robert W. Hamilton* and *Steven T. Catlett*, for appellee.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Jeffrey L. Glasgow*, Assistant Prosecuting Attorney, for appellant Judge Katherine S. Lias.

*James E. Zorn*, for appellant Franklin County Children Services Board.

*Paul Skendelas* and *David Strait*, urging reversal for *amici curiae*, Ohio Association of Juvenile and Family Court Judges and Ohio Association of CASA/GAL.

_____

**DOUGLAS, J.**

{¶ 12} In *T.R.*, *supra*, this court held that a juvenile court judge could restrict public access, which included the press, to a custody proceeding involving a minor child "if the court finds, *after hearing evidence and argument on the issue*, (1) that there exists a reasonable and substantial basis for believing that public access could harm the child or endanger the fairness of the adjudication, and (2) the potential for harm outweighs the benefits of public access." (Emphasis added.) *Id.*, paragraph three of the syllabus. *T.R.* involved the validity of a court-closure order and a gag order in a pending consolidated dependency and custody proceeding.

{¶ 13} The situation here, however, while embodying practically identical competing factors as those found in *T.R.*, involves whether the public can be denied access to a hearing commenced for the purpose of determining whether a juvenile court proceeding should be open or closed to the public. Specifically, we are asked to determine whether a juvenile court judge has the authority to have the public (including the press) excluded from all or portions of a closure hearing.

{¶ 14} The propriety of granting or denying the public access to court proceedings can involve the weighing of competing factors. This is especially apparent when the proceeding at issue pertains to minor children and the circumstances surrounding the case have been the subject of considerable publicity.

{¶ 15} On the one hand is the freedom from interference conferred upon the press by the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution, and the open-courts provision of Section 16, Article I of the Ohio Constitution. These liberties and rights bestowed upon the press and public must be, on the other hand, harmonized with the countervailing

interests at stake, particularly the power of the courts to control their proceedings for a fair administration of justice and ensure, as *parens patriae*, that such proceedings not have a detrimental and adverse effect on children whose cases come before the court.

{¶ 16} We recognize and agree that "[c]hildren have a very special place in life which law should reflect." *May v. Anderson* (1953), 345 U.S. 528, 536, 73 S.Ct. 840, 844, 97 L.Ed. 1221, 1228 (Frankfurter, J., concurring). Matters involving children have always been subject to close scrutiny and supervision of the courts. See, generally, *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. Likewise, the public (including the press) has a need and right to have open courts. What transpires in the courtroom is public property, *Craig v. Harney* (1947), 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551, and attendance at a public trial promotes fairness and enhances public confidence in the judicial system, *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 569-573, 100 S.Ct. 2814, 2823-2825, 65 L.Ed.2d 973, 984-987. "'The principle that justice cannot survive behind walls of silence has long been reflected in the "Anglo-American distrust for secret trials."'" *Id.*, 448 U.S. at 574, 100 S.Ct. at 2826, 65 L.Ed.2d at 987, fn. 9. See, also, *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 606, 102 S.Ct. 2613, 2619-2620, 73 L.Ed.2d 248, 256-257, wherein the court recognized the benefits of public scrutiny of the judicial process and emphasized that "the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one." Similarly, this court has stated that "[t]he guarantee of a public trial is a cornerstone of our democracy which should not be circumvented unless there are extreme overriding circumstances." *State v. Lane* (1979), 60 Ohio St.2d 112, 119, 14 O.O.3d 342, 347, 397 N.E.2d 1338, 1343. There is no question that attendance at a public trial allows the public to learn and understand the functioning

of their government. *Id.* In many instances, public awareness with regard to matters concerning children can be extremely important and useful.

{¶ 17} This court has confronted similar issues raised by *Richmond* and *Globe*, *supra*, and their progeny—*Press-Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed. 2d 629; and *Press-Enterprise Co. v. Superior Court* (1986), 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1. In *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 28 OBR 472, 504 N.E.2d 37, we determined that a public right to access to *pretrial* proceedings, while not absolute, is embraced by both the United States and Ohio Constitutions. We have also concluded that the rationale underlying the public right of access in criminal trials pertains, with minor exceptions, to juvenile court proceedings. *T.R*, *supra*. See, also, *Richmond*, *supra*, 448 U.S. at 567, 100 S.Ct. at 2822, 65 L.Ed.2d at 983-984, wherein the Supreme Court, citing certain historical material, indicated that the underpinnings justifying public access to criminal trials apply with equal force to civil trials.

{¶ 18} Accordingly, we hold that:

(1) Unless summarily denied, a motion of a party to a juvenile court proceeding ("proceeding") requesting that the proceeding be closed to the press and public, requires the juvenile court to conduct an evidentiary hearing ("closure hearing") to determine whether closure of the proceeding is warranted. Closure of the proceeding may be warranted upon a showing by the juvenile court that it has followed the standards set forth in *In re T.R.*, *supra*, at paragraph three of the syllabus, and that there are no reasonable alternatives to closure;

{¶ 19} (2) When a party to a juvenile court proceeding asserts that a closure hearing itself should be closed, the juvenile court must conduct an *in camera* inspection to determine if closure of the closure hearing is appropriate. Any party urging the closure of a proceeding must present to the juvenile court, for its *in camera* inspection, a written or recorded summary of any testimony sought to be

8

excluded from the public domain. Such summary must contain sufficient information for the juvenile court to make an informed decision, pursuant to the standards set forth in *T.R.*, as to whether any or all of the testimony sought to be excluded from public disclosure should be excluded;

{¶ 20} (3) If an *in camera* inspection is required, the inspection must be conducted with counsel for the parties, the press and the public, if any, present and participating, and such participation is to include a review by counsel of the summary of testimony sought to be excluded;

{¶ 21} (4) At the conclusion of the *in camera* inspection, counsel must be provided with an opportunity to object to the court's finding. Upon objection by counsel, the court's finding of closure or nonclosure of the proceeding is a final order subject to appeal as affecting a substantial right in a special proceeding. Testimony which is the subject of an objection shall be sealed and, as sealed, preserved as part of the record for possible appellate review. Unless and until an appeal is taken, the juvenile court proceeding may continue at the court's convenience; and

{¶ 22} (5) Those persons present and participating at the *in camera* inspection are prohibited, under penalty of contempt, from disseminating any information determined by the juvenile court to be excluded from public disclosure, unless and until it is determined by competent authority that such information may be released to the public.

{¶ 23} Our decision today does not disturb the pronouncements set forth in *T.R.* We reaffirm that any restriction shielding court proceedings from public scrutiny should be *narrowly tailored* to serve the competing interests of protecting the welfare of the child or children and of not unduly burdening the public's right of access. See *State ex rel. The Cincinnati Post v. Second Dist. Court of Appeals* (1992), 65 Ohio St.3d 378, 381, 604 N.E.2d 153, 156, citing *T.R.*, *supra*. See, also, *Globe*, *supra*, 457 U.S. at 607, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. Indeed, "[t]he

exclusion of the public should be applied sparingly," *Lane*, *supra*, at 121, 14 O.O.3d at 348, 397 N.E.2d at 1344, and the doors to the courtroom "may be closed to the general public only on a rare occasion after a determination that in no other way can justice be served [emphasis added]," *Lexington Herald-Leader Co. v. Tackett* (Ky. 1980), 601 S.W.2d 905, 906. Naturally, given the gravity of the competing factors involved, the trial court must be permitted to determine on a case-by-case basis whether the interests of the child or children are, in certain cases, paramount to the interests of the public, thereby warranting closure and whether no reasonable alternative to closure exists. We remain cognizant that care must be taken to protect the best interests of children in certain legal matters but, conversely, we are also aware that excessive secrecy is in itself dangerous. Courtroom secrecy can very well lead to festering emotions resulting in tragedy.

{¶ 24} Further, the parties involved and those who have an interest in the cause should be allowed an active and meaningful role in the closure hearing. "Without an active and meaningful role * * *, the hearings themselves would become meaningless and the resultant decision would merely represent the personal predilections of the presiding judge." *State ex rel. Miami Valley Broadcasting Corp. v. Kessler* (1980), 64 Ohio St.2d 165, 167, 18 O.O.3d 383, 385, 413 N.E.2d 1203, 1205.

{¶ 25} Perceptively recognizing all of this, the court of appeals, in directing Judge Lias to vacate her closure ruling, stated that:

"The trial court may entertain at the closure hearing summaries of testimony by witnesses who may subsequently testify at the permanent commitment hearing. Resolution of the closure issues may be predicated upon said summaries pursuant to *In re T.R.* (1990), 52 Ohio St.3d 6 [556 N.E.2d 439]. The Rules of Evidence are of necessity relaxed to allow the presentation of the information in summary form."

{¶ 26} We believe that the court of appeals reached the proper conclusion. With these limited restrictions, the press and public can play a vital and positive

role in the entire courtroom process if they choose to take an active part in our judicial system. Allowing the public, including the press, into our courtrooms will enable society as a whole to become better acquainted with the functioning of the judicial process and the laws enacted by the General Assembly that directly impact our minor children.

{¶ 27} Accordingly, we affirm the judgment of the court of appeals granting the writ of prohibition and remand this cause to the juvenile court for further proceedings consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

_____