[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 61.]

THE STATE EX REL. DISPATCH PRINTING COMPANY *v.* LOUDEN, JUDGE.

[Cite as *State ex rel. Dispatch Printing Co. v. Louden*, 2001-Ohio-268.]

*Prohibition—Writ sought to prohibit judge of common pleas court, juvenile division, from closing access to the public from any future juvenile court proceedings without first conducting a closure hearing and making the required findings—Mandamus sought ordering judge to provide Dispatch Printing Company with a complete unredacted copy of the transcript of the closed detention hearing concerning fourteen year old—Writs granted.*

(No. 00-530—Submitted November 28, 2000—Decided February 14, 2001.)

IN PROHIBITION and MANDAMUS.

————————————————

*Per Curiam.*

{¶ 1} In March 2000, Jason Bell, a twenty-year-old resident of the city of Delaware, was allegedly kidnapped and murdered. It was reported that Bell had been bludgeoned to death. On March 17, adult suspects T. William Ellis and Scott A. Spriggs appeared in Delaware Municipal Court on charges of kidnapping Bell. Early that morning, the Delaware police arrested Stacey E. DiGian, then fourteen years old, and charged her with a delinquency count of kidnapping Bell.

{¶ 2} In the early afternoon, relator, the Dispatch Printing Company ("Dispatch"), which publishes the newspaper the Columbus Dispatch, learned that respondent, Judge Thomas E. Louden of the Delaware County Court of Common Pleas, Juvenile Division, had scheduled a detention hearing for DiGian at 3:30 that afternoon. Both orally and by written facsimile transmission, the Dispatch requested that Judge Louden provide access to the detention hearing and further proceedings involving DiGian, and that if Judge Louden nevertheless decided to

close the hearing, he first conduct an evidentiary hearing on closure. The Delaware Gazette and at least one television station also requested access to the detention hearing.

{¶ 3} For approximately twenty-one years preceding the Dispatch's request for access to the DiGian detention hearing, in the absence of a specific request for access by the media, Judge Louden has generally closed juvenile court proceedings to the general public and permitted only the actual participants to be present. During the same period, Judge Louden has never conducted any closure hearing.

{¶ 4} The juvenile court has no local rule governing the procedure for seeking access to or closure of a juvenile court proceeding. Instead, under the court's informal procedure, a media request for access to a juvenile proceeding is first submitted to the court administrator, Stuart Berry, or, if he is unavailable, to the court's chief probation counselor, Edward Uhlman. Berry or Uhlman then provides Judge Louden with information concerning the case and the request for access, and Judge Louden decides, without any hearing, whether to allow the public, including the press, access to the juvenile proceeding.

{¶ 5} Because of Judge Louden's history of summarily denying media requests for access to juvenile court proceedings, the Dispatch requested access to the DiGian detention hearing and a closure hearing in writing. Consistent with Judge Louden's past practice, the Dispatch's request for access and a closure hearing was referred to Berry. Berry informed Judge Louden about the request, DiGian's age and lack of a prior criminal history, the kidnapping charge, and speculation that more charges might be forthcoming. Based on this information, Judge Louden decided to deny the Dispatch's request for access and closed the detention hearing. Judge Louden held no closure hearing before the detention hearing. Judge Louden claims that the Dispatch had represented that its attorney could not be present for a closure hearing on March 17, a Friday, but the Dispatch asserts that it made no such representation and that its counsel was available to

2

attend a closure hearing that afternoon. Nothing would have prevented Judge Louden from delaying the March 17 detention hearing for a half-hour or an hour until a closure hearing was conducted.[1]

**{¶ 6}** At 3:30 p.m. on March 17, Louden conducted the detention hearing without members of the public, including the press, present. Neither of the parties to the case, DiGian or the state of Ohio, nor their counsel had requested closure of the proceeding. Immediately before and during the hearing, Berry and Uhlman had two deputy sheriffs posted at the entrances to the courthouse and ordered them to exclude the media, but not other members of the public, from the courthouse. In addition to the juvenile court, the probate court and the probation office are located in the courthouse. The officers prevented a Dispatch reporter from entering the courthouse, even though other members of the public were permitted to enter and exit. According to the officers and most court personnel, including Judge Louden, no security threat existed to support exclusion of the media from the courthouse. At the conclusion of the detention hearing, Judge Louden ordered that DiGian be held in detention.

**{¶ 7}** On March 20, Judge Louden issued a journal entry reflecting his denial of the Dispatch's March 17 request for access to the detention hearing and for a closure hearing. Judge Louden noted that if further proceedings involving DiGian were closed, hearings would be held on the Dispatch's request. On that date, Judge Louden also advised Berry that neither the press nor the public could be barred from the courthouse.

**{¶ 8}** On March 21, the Dispatch filed this action for a writ of prohibition to vacate Judge Louden's closure of the March 17 detention hearing, to prevent

---

1. Juv.R. 7(F)(1) provides that "[w]hen a child has been admitted to detention or shelter care, a detention hearing shall be held promptly, not later than seventy-two hours after the child is placed in detention or shelter care or the next court day, whichever is earlier, to determine whether detention or shelter care is required."

Judge Louden from closing further proceedings unless all requirements of notice, hearing, and findings had been fulfilled, to prohibit Judge Louden from physically barring the media from access to the public areas of the courthouse, and to order Judge Louden to provide a complete transcript of the detention hearing. On March 24, we granted an alternative writ and issued a schedule for the presentation of evidence and briefs. *State ex rel. Dispatch Printing Co. v. Louden* (2000), 88 Ohio St.3d 1455, 725 N.E.2d 672. Judge Louden subsequently provided the Dispatch with a redacted copy of the March 17 detention hearing transcript. On April 4, following a hearing on DiGian's March 30 motion to close further proceedings in the case, Judge Louden denied the motion. The parties filed evidence and briefs, and the Ohio Coalition for Open Government filed an *amicus curiae* brief in support of the writ.[2]

{¶ 9} This cause is now before the court for a consideration of the merits.

Mootness

{¶ 10} Judge Louden asserts that prohibition does not lie because "there are no pending actions to be prohibited" and "any possible harm suffered has since been remedied." In effect, Judge Louden contends that this case is moot.

{¶ 11} Judge Louden's contention is meritless. Merely because Judge Louden has already executed one of the judicial acts sought to be prevented by closing the detention hearing does not moot the Dispatch's prohibition claim. See, *e.g., State ex rel. Rogers v. McGee Brown* (1997), 80 Ohio St.3d 408, 410, 686 N.E.2d 1126, 1127-1128.

{¶ 12} In addition, contrary to Judge Louden's claims, the Dispatch continues to be harmed by Judge Louden's closure order because he refuses to give

2. A November 22, 2000 article in the Columbus Dispatch indicated that DiGian has now been remanded to the custody of the Department of Youth Services until the age of twenty-one for her part in the kidnapping and death of Jason Bell.

4

the Dispatch a complete, unredacted copy of the transcript of the March 17 detention hearing.

{¶ 13} Moreover, an exception to the mootness doctrine arises when the claims raised are capable of repetition, yet evading review. This exception applies when the challenged action is too short in duration to be fully litigated before its cessation or expiration, and there is a reasonable expectation that the same complaining party will be subject to the same action again. *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 231, 729 N.E.2d 1182, 1185.

{¶ 14} Both of these factors are present here. As occurred in this case, "[c]ourtroom closure cases often evade review, since a closure order usually expires before an appellate court can consider it * * * ." *State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 175, 586 N.E.2d 101, 102-103. In fact, we have held that prohibition is *the* appropriate action to challenge trial court orders restricting public access to pending litigation. *State ex rel. News Herald v. Ottawa Cty. Court of Common Pleas, Juv. Div.* (1996), 77 Ohio St.3d 40, 43-44, 671 N.E.2d 5, 7-8; *State ex rel. Dayton Newspapers, Inc. v. Phillips* (1976), 46 Ohio St.2d 457, 75 O.O.2d 511, 351 N.E.2d 127, paragraphs one and two of the syllabus. Further, there is a reasonable expectation that in the absence of the requested writ, Judge Louden will again close further proceedings. *Beacon Journal*, 63 Ohio St.3d at 175, 586 N.E.2d at 103. Indeed, Judge Louden asserts that detention hearings should be presumed closed.

{¶ 15} Therefore, this cause is not moot, and we now proceed to a determination of the merits.

Prohibition:  Closure of Juvenile Delinquency Proceedings

**{¶ 16}** As we recently held, juvenile delinquency proceedings are neither presumed open nor presumed closed.  *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juv. Div.* (2000), 90 Ohio St.3d 79, 85, 734 N.E.2d 1214, 1219-1220; cf. *United States v. A.D.* (C.A.3, 1994), 28 F.3d 1353, 1358 ("the detention and delinquency proceedings called for in the [Federal Juvenile Delinquency Act] are closely analogous to criminal proceedings, and all the public interests in criminal proceedings [favoring opening the proceedings to the public] seem present and equally cogent here").

**{¶ 17}** Instead, "under the applicable standard, a juvenile court may restrict public access to delinquency proceedings if, after hearing evidence and argument on the issue, the court finds that (1) there exists a reasonable and substantial basis for believing that public access could harm the child or endanger the fairness of the adjudication, (2) the potential for harm outweighs the benefits of public access, and (3) there are no reasonable alternatives to closure."  *Plain Dealer*, 90 Ohio St.3d at 85, 734 N.E.2d at 1220, citing *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph three of the syllabus, and *State ex rel. Dispatch Printing Co. v. Lias* (1994), 68 Ohio St.3d 497, 628 N.E.2d 1368, paragraph one of the syllabus.  In this regard, the person seeking closure of a juvenile delinquency proceeding bears the burden of establishing these factors.  *Plain Dealer*, 90 Ohio St.3d at 86, 734 N.E.2d at 1221.

**{¶ 18}** Judge Louden did not hear evidence and argument on the issue of closing the detention hearing and did not make the requisite findings before adjudicating the issue in an informal, off-the-record procedure.  In addition, no party to the delinquency proceeding sought closure of the detention hearing.  In the absence of the foregoing, Judge Louden's closure of the detention hearing was unjustified and constituted "little more than [his] personal predilections."  *Plain Dealer*, 90 Ohio St.3d at 87, 734 N.E.2d at 1221; *Lias*, 68 Ohio St.3d at 504, 628

N.E.2d at 1373 (parties and those who have an interest in the cause must have an active and meaningful role in closure hearing).

{¶ 19} Furthermore, as Judge Louden concedes, barring the media from the courthouse was also inappropriate. A trial court should not close a courtroom to the media when other members of the public are afforded access. See, *e.g., Lexington Herald Leader Co., Inc. v. Tackett* (Ky.1980), 601 S.W.2d 905, 907; *Johnson v. Simpson* (Ky.App.1968), 433 S.W.2d 644. "Closing the courthouse doors and excluding the press and the public, if it is ever to be justified solely to prevent possible publicity, should be a matter of strictest necessity, for free access to the traditionally public proceedings of our courts and tribunals is too fundamental a value to be sacrificed if an alternative exists." *Dayton Newspapers*, 46 Ohio St.2d at 477, 75 O.O.2d at 522, 351 N.E.2d at 139 (Stern, J., concurring). The order by Judge Louden's court administrator and chief probation counselor to close the courthouse to the media during the detention hearing was not justified and erroneously denied the Dispatch access to a public building. See *Ridenour v. Schwartz* (1994), 179 Ariz. 1, 4, 875 P.2d 1306, 1309.

{¶ 20} Based on the foregoing, Judge Louden abused his discretion by closing the detention hearing and barring the Dispatch from the courthouse without any motion for closure, hearing on the issue, and the required findings. *Plain Dealer*, 90 Ohio St.3d at 88-89, 734 N.E.2d at 1222. Therefore, we grant the Dispatch a writ of prohibition to prevent the closure of the courthouse and prohibit the closure of any future juvenile delinquency proceedings to the press and public without the satisfaction of the requirements set forth in *Plain Dealer*.

{¶ 21} Moreover, although the Dispatch further seeks a writ of *prohibition* to compel Judge Louden to provide it with a complete, unredacted copy of the transcript of the March 17 detention hearing, we *sua sponte* convert this to a request for a writ of *mandamus*, which is the appropriate writ to compel this relief, and grant it. In so holding, we note that in this case, "the principal issue would be

argued the same way under either a mandamus or prohibition theory" and that Judge Louden does not contend that the requested relief should be denied because it was improperly styled as being in prohibition. See *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 591 N.E.2d 1194, 1195, fn. 1; *State ex rel. Burech v. Belmont Cty. Bd. of Elections* (1985), 19 Ohio St.3d 154, 19 OBR 437, 484 N.E.2d 153.

*Writs granted.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS and RESNICK, JJ., concur separately.

COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

PFEIFER, J., dissents.

_____

**DOUGLAS, J., concurring.**

{¶ 22} I concur in the ultimate disposition of this cause of action. However, I must voice my concerns regarding the lengthy delay in our granting of the requested peremptory writ.

{¶ 23} On March 21, 2000, relator, the Dispatch Printing Company, filed a complaint in this court for a peremptory writ of prohibition. Relator filed this cause of action as a result of a decision by respondent, Judge Thomas E. Louden of the Delaware County Juvenile Court, to deny access to the news media to a juvenile court detention proceeding. The relator sought, among other relief, to prohibit respondent from closing any further judicial proceedings unless respondent conducted a proper closure hearing and made findings indicating the necessity of closing future proceedings. The complaint also asked us to order respondent to provide a complete transcript of the closed detention proceeding. While I voted, on March 24, 2000, to grant a peremptory writ, a majority of the court did not do so. *State ex rel. Dispatch Printing Co. v. Louden* (2000), 88 Ohio St.3d 1455, 725 N.E.2d 672. Thus, we are now, at this late date, coming to decide the issue.

**{¶ 24}** Given the delay in deciding this matter, there are concerns whether relator continues to have a viable cause of action *in prohibition*. It would appear at first glance that the only relief we can grant relator at this time is to order respondent to provide a *complete* transcript of the detention hearing, an action lying in mandamus, not prohibition. As the majority points out in its second footnote, the underlying proceedings at issue have come to an end. Of course, we would not be in this position had we granted relator's requested relief by issuing a *peremptory* writ when this matter was initially considered by the court eight months ago. At this late stage, even by granting all of the requested relief, it is doubtful that we will have adequately protected relator's rights of access to our courts of law guaranteed by the Ohio and United States Constitutions.

**{¶ 25}** In any event, my beliefs regarding freedom of the press and the public's right to know have been well documented. See, *e.g., In re T.R.* (1990), 52 Ohio St.3d 6, 24-27, 556 N.E.2d 439, 456-459 (Douglas, J., concurring in part and dissenting in part) (citing Section 16, Article I and Section 11, Article I of the Ohio Constitution for the proposition that any courtroom closure or gag order is repugnant to the principle that judicial integrity and fairness is best fostered by preserving open access to our courts of law), and *State ex rel. Dispatch Printing Co. v. Lias* (1994), 68 Ohio St.3d 497, 628 N.E.2d 1368 (reaffirming the principles that any restriction shielding juvenile court proceedings from public scrutiny should be narrowly tailored to serve the competing interests of protecting the welfare of children and of not unduly burdening the public's right of access and that any exclusion of the public from our courts of law should be applied sparingly). Further, this court has established certain procedures that must be conducted before a closure order may be issued. In accordance with *In re T.R.*, paragraph three of the syllabus, and *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juv. Div.* (2000), 90 Ohio St.3d 79, 85, 734 N.E.2d 1214, 1220, a juvenile court may restrict public access to delinquency proceedings if, after the

submission of evidence and arguments on the issue, the court finds that "(1) there exists a reasonable and substantial basis for believing that public access could harm the child or endanger the fairness of the adjudication, (2) the potential for harm outweighs the benefits of public access, and (3) there are no reasonable alternatives to closure." Those procedures should have been followed by respondent but were not.

{¶ 26} Considering respondent's long history of denying media requests for access and closing juvenile court proceedings, there is a strong indication that relator may be subjected to these same actions in the future. Therefore, I agree with the majority that relator's cause of action is not moot, as "the issues raised are 'capable of repetition, yet evading review.' " *State ex rel. Plain Dealer Publishing Co. v. Barnes* (1988), 38 Ohio St.3d 165, 527 N.E.2d 807, paragraph one of the syllabus.

{¶ 27} Accordingly, I concur in the decision to grant a peremptory writ of prohibition to prohibit respondent from closing off access by the news media and public to any future juvenile court proceedings without first conducting a closure hearing and making required findings. Further, I concur in the majority's decision to also issue, *sua sponte*, a writ of mandamus ordering respondent to provide relator with a complete, unredacted copy of the transcript of the closed detention hearing.

RESNICK, J., concurs in the foregoing concurring opinion.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 28} I agree with the majority's decision, on the authority of *Shumate* and *Burech,* to *sua sponte* convert a portion of relator's cause of action into a request for a writ of mandamus and to grant that relief in order to compel production of the unredacted transcript. See *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 591 N.E.2d 1194; *State ex rel. Burech v. Belmont Cty. Bd. of Elections* (1985), 19 Ohio St.3d 154, 19 OBR 437, 484 N.E.2d 153. For the

following reasons, however, I respectfully disagree with the majority's decision to grant the Dispatch's requested writ of prohibition.

{¶ 29} As the majority notes, the Dispatch seeks a writ of prohibition, in part, to vacate respondent's closure of the March 17 detention hearing. But the Dispatch did not file its action in prohibition until four days *after* the detention hearing occurred, and one day *after* Judge Louden journalized an entry reflecting his prior denial of the Dispatch's prehearing request for access. Because the relator in an action for prohibition must show that the court or officer against whom the writ is sought is *about to exercise* power unauthorized by law, *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 592, 629 N.E.2d 446, 448, and because the action sought to be prohibited here had already occurred by the time the Dispatch filed its complaint, the Dispatch's delay in filing rendered this portion of its cause of action moot.

{¶ 30} The majority disagrees, relying on this court's decision in *State ex rel. Rogers v. McGee Brown* (1997), 80 Ohio St.3d 408, 410, 686 N.E.2d 1126, 1127-1128. In *Rogers,* I joined this court in concluding that the court of appeals had incorrectly applied the mootness doctrine to deny a writ of prohibition. But in *Rogers*, although the trial court had already indicated at a hearing how it would later rule on the relator's argument by the time the relator sought to prohibit the action, the relator filed his complaint in prohibition *before* the court journalized its judgment entry the following month. That is not the case here.

{¶ 31} In addition to this factual distinction, our *Rogers* opinion included a legal justification to reject the mootness doctrine that does not apply here. In *Rogers,* we deemed the mootness doctrine inapplicable because " 'where an inferior court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction and *to correct the results of previous jurisdictionally unauthorized actions*.' " (Emphasis *sic*.) *Id.* at 410, 686 N.E.2d at 1127, quoting *State ex rel. Litty v. Leskovyansky* (1996), 77

Ohio St.3d 97, 98, 671 N.E.2d 236, 238. Here, in contrast to the situation we confronted in *Rogers*, respondent's jurisdictional basis to proceed with DiGian's detention hearing is not at issue. Accordingly, I am not persuaded that *Rogers* applies.

{¶ 32} The majority also notes that "an exception to the mootness doctrine arises when the claims raised are capable of repetition, yet evading review." But as the United States Supreme Court has noted, " 'the mootness exception for disputes capable of repetition yet evading review * * * will not revive a dispute which became moot before the action commenced.' " *Steel Co. v. Citizens for a Better Environment* (1998), 523 U.S. 83, 109, 118 S.Ct. 1003, 1020, 140 L.Ed.2d 210, 237, quoting *Renne v. Geary* (1991), 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288, 301.

{¶ 33} The Dispatch also seeks a writ of prohibition to ensure that, in future cases, respondent will adhere to this court's recent precedent by conducting an evidentiary hearing before closure. See *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juv. Div.* (2000), 90 Ohio St.3d 79, 734 N.E.2d 1214. But the majority's decision to prohibit the closure of "any future juvenile delinquency proceedings" to the press and public absent a *Plain Dealer* hearing amounts to a grant of injunctive relief. As this court has previously noted, we do not have original jurisdiction in injunction, and "[e]ven where a party is engaged in a vexatious abuse of judicial process, this court will only prohibit a court from proceeding *where there is a case pending before that particular court.*" (Emphasis added.) *Commercial Sav. Bank v. Wyandot Cty. Court of Common Pleas* (1988), 35 Ohio St.3d 192, 194, 519 N.E.2d 647, 649. Here, the juvenile court has apparently remanded DiGian to the custody of the Department of Youth Services until the age of twenty-one. Accordingly, there are no further proceedings regarding DiGian currently pending before respondent's court, and we should not

entertain what amounts to a request for injunctive relief to compel certain behavior by the court in future, unrelated proceedings.

{¶ 34} For the foregoing reasons, though I agree with the majority that the Dispatch is entitled to an unredacted transcript of the hearing that it was unlawfully barred from attending, I respectfully dissent from the majority's decision to grant a writ of prohibition in this case.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

───────────────

**PFEIFER, J., dissenting.**

{¶ 35} The concerns raised in my dissent in *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juv. Div.* (2000), 90 Ohio St.3d 79, 89-90, 734 N.E.2d 1214, 1223-1224, remain manifest.

{¶ 36} Fortunately, it is the rare exception when the underlying charge in a criminal case heard in juvenile court involves aggravated murder. Allowing open detention hearings in cases involving aggravated murder is less troubling than allowing open detention hearings in cases involving the fairly minor offenses, like petty theft, which comprise the bulk of criminal cases heard in juvenile courts. However, no matter what the circumstances, the burden of persuasion should not be on the child, who is typically not represented by either counsel or family. The presumption of open detention hearings established by this court renders meaningless the statutory scheme that keeps juvenile records closed. In short, this court has elevated the needs of newspapers and other publishers over those of the children the juvenile system is designed to protect. I dissent.

───────────────

*Zeiger & Carpenter, John W. Zeiger* and *Marion H. Little, Jr.*, for relator.

*W. Duncan Whitney*, Delaware County Prosecuting Attorney, *Hugh A. Greentree* and *David A. Hejmanowski*, Assistant Prosecuting Attorneys, for respondent.

*Baker & Hostetler, L.L.P., Kyle B. Fleming* and *Jeffrey T. Williams*, for *amicus curiae*, Ohio Coalition for Open Government.

————————————