656 So.2d 113 (1995)
The ASSOCIATED PRESS; Broadcasters of Mississippi, Inc. d/b/a WJTV; Gannett River States Publishing Corporation d/b/a The Clarion Ledger; Love Communications Company d/b/a Mississippi News Tonight; Northstar Television of Jackson, Inc. d/b/a WAPT; and TV-3, Inc. d/b/a WLBT
v.
William M. BOST, esq., in his Official Capacity as Chairman, Mississippi Commission on Judicial Performance.
No. 92-CA-00332-SCT.
Supreme Court of Mississippi.
June 1, 1995.
*114 Leonard D. Van Slyke Jr., Terryl K. Rushing, Alston Rutherford, Tardy & Van Slyke, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Jackson, James F. Steel, Larry Stroud, Sp. Asst. Attys. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice.
In this case we consider the validity of Canon 3(A)(7) of the Mississippi Code of Judicial Conduct which prevents cameras in the courtroom except under specific circumstances. We find the Canon to be constitutionally valid and fully operative in our courtrooms. Until we have thoroughly researched the benefits and ramifications of allowing cameras in our courtrooms, Canon 3(A)(7) will remain in full effect.

I.
Appellants (the press) are members of the news media who desire to use cameras in Mississippi courtrooms to broadcast and cover trials in accordance with Rule 8.06 of the Uniform Criminal Rules of Circuit Court. *115 Rule 8.06 provides that "[n]o cameras or broadcasting will be permitted in the courtroom without the prior written approval of the court." The press brings suit against William Bost (Bost), in his official capacity as chairman of the Mississippi Commission on Judicial Performance, seeking to invalidate Canon 3(A)(7) of the Mississippi Code of Judicial Conduct which allows camera coverage only in specific circumstances.
This action was initiated after Judge L. Breland Hilburn excluded cameras from the courtroom during the trial of Byron de la Beckwith on November 12, 1991. We affirmed the court's ruling after the press sought a writ of prohibition in the matter. Thereafter, the press filed a complaint against Bost for writ of prohibition, and in the alternative, a complaint for injunctive relief or declaratory judgment in the circuit court on December 12, 1991 seeking to prevent enforcement of Canon 3(A)(7). Bost moved for summary judgment. Granting Bost's motion for summary judgment, the trial court held that "absent a finding that Canon 3(A)(7) is invalid, there is no basis for granting either a writ of prohibition or an injunction." The court reasoned that the Supreme Court has the sole judicial authority to promulgate procedural rules regarding the administration of state courts. The court further reasoned that while it is apparent that the Supreme Court adopted two separate and conflicting rules pertaining to cameras in the courtroom, the trial court lacked the jurisdiction to amend, suspend or otherwise enjoin the operation of Canon 3(A)(7).
Aggrieved, the press filed a notice of appeal on March 27, 1992.

II.
The press argues that Canon 3(A)(7) conflicts with Rule 8.06 of the Uniform Criminal Rules of Circuit Court Practice. Because the Uniform Criminal Rules of Circuit Court Practice were adopted by this Court in 1979, and the canons were adopted by the Mississippi Conference of Judges in 1974, the press asserts that the criminal rules should prevail in the event of conflict because they were adopted last and were adopted by a superior tribunal. Greenville School v. Western Line School, 575 So.2d 956 (Miss. 1990). See also Jackson Municipal Airport Authority v. Shivers, 206 So.2d 190, 193 (Miss. 1968); Lamar County School Board v. Saul, 359 So.2d 350, 353 (Miss. 1978). Rule 8.06 was the later pronouncement by this Court on camera coverage and should therefore control, argues the press.
The press' argument is without merit. The language of Canon 3(A)(7) and Rule 8.06 do not conflict. We have held that the doctrine of repeal by implication is not favored. Roberts v. Miss.Rep.Party State Exec. Comm., 465 So.2d 1050, 1051 (Miss. 1985). Furthermore, statutes on the same subject, although in apparent conflict, should be construed in harmony with each other to give effect to each if possible. Id. at 1052.
Rule 8.06 provides:
No cameras or broadcasting will be permitted in the courtroom without the prior written approval of the court.
Cannon 3(A)(7) provides:
A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:
(a) the use of electronic photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;
(b) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;
(c) the photographic or electronic recording and reproduction of appropriate court proceedings under the following conditions:
(i) the means of recording will not distract participants or impair the dignity of the proceedings;
(ii) the parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;
(iii) the reproduction will not be exhibited until after the proceeding has been *116 concluded and all direct appeals have been exhausted; and
(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.
Rule 8.06 does not give the judge the absolute authority to allow broadcasting in his courtroom. Reading Rule 8.06 harmoniously with Canon 3(A)(7), it merely provides that the judge must give his written permission when allowing broadcasting under the circumstances required in the Canon. Thus, the press' argument that Canon 3(A)(7) was impliedly repealed is without merit.
Furthermore, Rule 8.06 has been revised effective May 1, 1995 to avoid any further confusion with respect to courtroom broadcasting. Rule 1.04 of the Uniform Rules of Circuit and County Court practice replaces Rule 8.06 and provides:
There shall be no broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that the court may authorize the same in accordance with the Code of Judicial Conduct.

III.
The press argues that it has been afforded a First Amendment right to attend and report on public trials. Richmond Newspapers v. Commonwealth of Virginia, 448 U.S. 555, 576, 100 S.Ct. 2814, 2827, 65 L.Ed.2d 973 (1980). Canon 3(A)(7), asserts the press, not only unconstitutionally constrains and limits its right to report, but also discriminates against photojournalists and broadcasters.
The press argues that Canon 3(A)(7) discriminates against photojournalists and broadcasters (the electronic media) by preventing them from adequately reporting the news. As a result of this disparate treatment, argues the press, they are denied equal protection of the laws as guaranteed under the Fifth and Fourteenth amendments. As authority for this position, the press cites Cable News Network v. American Broadcasting, 518 F. Supp. 1238 (N.D.Ga. 1981) and Memphis Publishing Company v. Leech, 539 F. Supp. 405 (W.D.Tenn. 1982).
Where an equal protection challenge is made to a state action in a situation involving fundamental rights, the press asserts that the rule of law challenged must survive strict scrutiny. San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Because freedom of speech is a fundamental right, the press argues that Canon 3(A)(7), as a restriction on this freedom, can only survive strict scrutiny if it is necessary to promote a compelling government interest. The press contends that no compelling interest can be advanced by the blanket denial of broadcasting and photographing trials based upon overwhelming public interest in the judiciary, the public's particular reliance on photographic news media to report information about trials, and the innovative ability of photographic and video technology to record proceedings with a minimum of intrusion.
The press also cites Billie Sol Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) in support of its argument. In Estes, portions of a defendant's trial were broadcasted and the trial judge gave day-to-day orders concerning the manner in which the trial could be televised. The defendant asserted that he was denied his right to a fair trial because the daily activities of television crews and photographers led to considerable disruption of the hearings. Addressing equal protection arguments, the court held:
It is said however, that the freedoms granted in the First Amendment extend a right to the news media to televise from the courtroom, and that to refuse to honor this privilege is to discriminate between the newspapers and television. This is a misconception of the rights of the press ... [the courts cannot] be said to discriminate where they permit the newspaper reporter access to the courtroom. The television and radio reporter has the same privilege. All are entitled to the same rights as the general public. The news reporter is not permitted to bring his typewriter or printing press. When the advances in these arts permit reporting by printing or by television without their *117 present hazards to a fair trial we will have another case.
381 U.S. at 539-40, 85 S.Ct. at 1631, 14 L.Ed.2d at 548.
The press asserts that the Supreme Court's holding in Estes with regard to equal protection has been overruled by Chandler v. Florida, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981) where the defendant complained that his due process rights were violated by cameras in the courtroom. At issue was the legality of a Florida Canon that permitted broadcast coverage of criminal trials subject to the presiding judge's authority. The press asserts the Supreme Court in Chandler held that "many of the negative factors found in Estes  cumbersome equipment, cables, distracting lighting, numerous camera technicians  are less substantial factors today than at that time." 449 U.S. at 576, 101 S.Ct. at 810, 66 L.Ed.2d at 752. The court upheld Florida's Canon reasoning that the defendant failed to show prejudice from courtroom media coverage, and that Estes did not announce a constitutional rule that all photographic or broadcast coverage of criminal coverage is inherently a denial of due process.
Because it is virtually no more obtrusive to utilize video and still photography in court proceedings than it is to allow attendance by print journalists, asserts the press, no rational reason exists to prevent camera coverage of court proceedings.
In the present case, the press' claim that Canon 3(A)(7) is unconstitutional and violates its equal protection rights is without merit. In determining whether a statute is violative of the equal protection clause, we have stated:
the United States Supreme Court has traditionally employed two standards of review. (1) In the general field of social and economic legislation, the Court has developed a low standard of review, commonly known as the rational basis test. Under this test a statute is presumed to be constitutional and will not be set aside as long as it is aimed at a permissible legislative purpose and as long as it is based on some rational justification to achieve the purpose intended. (2) Where, however, legislation seeks to make certain classifications, most notably on the basis of race, these classifications are immediately suspect. The presumption of validity disappears and applying rigid scrutiny, the state is placed under a heavy burden to show a compelling state interest in justifying the classification. Strict scrutiny review has also been applied when a statute infringes upon a fundamental right.
Rias v. Henderson, 342 So.2d 737, 738-39 (Miss. 1977) (citations omitted). The question that must be addressed under this analysis is whether the right to photograph and broadcast inside the courtroom is a fundamental right so as to receive strict scrutiny analysis, or whether it receives rational basis review. The press fails to cite any authority indicating that there is a fundamental right to broadcast from the courtroom.
Freedom of the press and speech are fundamental rights guaranteed by the First Amendment. Under the First Amendment, the press and the public are guaranteed a right of access to public trials in order to gather information, and report what they see and hear. Richmond Newspapers, 448 U.S. at 575, 100 S.Ct. at 2826, 65 L.Ed.2d 973. This constitutional right of speech and the press is satisfied by allowing the press to attend the trial and report what they have heard; however, there is no constitutional right to have testimony recorded and broadcast. Nixon v. Warner Communications, Inc., 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570, 571 (1978); accord Chandler v. Florida, 449 U.S. 560, 569, 101 S.Ct. 802, 807, 66 L.Ed.2d 740, 748 (1981). See also Petition of Post-Newsweek Stations, 370 So.2d 764, 774 (Fla. 1979); Combined Communications Corp. v. Finesilver, 672 F.2d 818, 821 (10th Cir.1982); and US. v. Hastings, 695 F.2d 1278 (11th Cir.1983). The courts cannot be said to discriminate where they grant the newspaper reporter access to the courts because the television and radio reporter have the same privilege. Estes v. Texas, 381 U.S. at 540, 85 S.Ct. 1628 at 1631, 14 L.Ed.2d at 548. Just as the newspaper reporter is not allowed to bring his typewriter or printing press into the courtroom, the *118 electronic media is not allowed to bring in their cameras and recording devices. Id.
The press' assertion that Chandler overruled the equal protection reasoning in Estes is mistaken. The statement in Chandler that "many negative factors found in Estes ... are less substantial factors today than at that time," was an argument made by the State of Florida in support of the Canon allowing courtroom media coverage. It was not a statement, as the press asserts, made by the Supreme Court itself in recognition of innovative technology making courtroom coverage less cumbersome, nor was it a statement by the Court substantiating due process arguments made by the electronic media. Chandler only stands for the proposition that courtroom broadcast coverage is not per se unconstitutional. However, as the Eleventh Circuit observed, "just because television coverage is not constitutionally prohibited does not mean that television coverage is constitutionally mandated." Hastings, 695 F.2d at 1280.
Because Canon 3(A)(7) does not violate any fundamental constitutional rights, it survives rational basis scrutiny. The Canon passes muster because legitimate and rational reasons for its existence include the state's interest in preserving order and decorum, preserving the truth-seeking function of a trial, and the protection of a defendant's rights. Hastings, 695 F.2d at 1283.

IV.
Asserting that Canon 3(A)(7) is an impermissible time, place and manner restriction on its First Amendment right to gather and report information, the press argues that the trial court erred when it failed to either grant a writ of prohibition, injunction, or declaratory judgment against enforcement of the Canon. The press cites the following authority indicating the trial court's authority to grant either form of relief requested: Vicksburg Waterworks Company v. Mayor and Aldermen of the City of Vicksburg, 185 U.S. 65, 22 S.Ct. 585, 46 L.Ed. 808 (1902) (an injunction may issue where the damages would be insufficient or irreparable) and State v. Maples, 402 So.2d 350, 351 (Miss. 1991) (writs of prohibition are available to prevent some palpable injury).
The press is entitled to the relief requested only if Canon 3(A)(7) is invalid or otherwise unjust. State v. Maples, 402 So.2d 350, 351 (Miss. 1981) (the function of a writ covers situations where the "superior court deems it necessary and advisable to issue the writ to prevent some palpable and irremediable injustice"); McGowan v. McCann, 357 So.2d 946, 949 (Miss. 1978) (a court has the power to grant injunctive relief if there is a reasonable probability that a real injury will occur, and if the apprehension is well grounded). As the Canon is neither unconstitutional, nor invalid, the press' argument must fail.
For the foregoing reasons, we affirm.
AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., SULLIVAN, PITTMAN and ROBERTS, JJ., concur.
McRAE, J., concurs in result only.
HAWKINS, C.J., specially concurs with separate written opinion joined by SMITH, J.
HAWKINS, Chief Justice, specially concurring:
I share with many members of the bench and bar a fear of the deleterious impact of a television broadcast upon a fair and impartial trial. Television broadcasting is awesomely powerful in affecting public opinion. The fact that a trial is being televised surely has an impact on those being viewed, and its impact upon the public can hardly be exaggerated. Snippets broadcast on news programs are hardly likely to give the viewer a balanced view of the proceedings, and few viewers have the time or opportunity to sit and watch the entire proceedings on television, even if the entire trial is broadcast. I have a genuine concern whether a defendant's constitutional right to a fair trial is adversely affected by being televised. Until such time as it can be demonstrated that publicly televising a trial has no adverse impact upon the accused's right to a fair trial, I would uphold Canon 3(A)(7) of the Code of Judicial Conduct.
*119 I cannot, however, buy the argument that a television reporter denied the right to bring his camera in the courtroom is not being discriminated against because the newspaper reporter cannot bring his typewriter into the courtroom, either. That is about like saying to the newspaper reporter that he cannot bring a pad and pencil into the courtroom. Or, if the reporter could take shorthand or stenotype, he could not do that, either, in the courtroom. In my view, to pass constitutional muster there must be some showing that the fact that the trial is being televised has an adverse impact on the courtroom participants or presents a danger of adversely affecting public opinion of the accused in such a manner as to deny him a fair trial. It cannot constitutionally be excluded because of cumbersome equipment interfering with the proceedings, which clearly present day cameras do not, nor the tenuous argument that a television reporter is not being denied any right because he, himself, is free to sit in the courtroom and take notes of the proceedings.
The constitutional right of freedom of the press covers television reporters as well, and the serious question presented by this case is not going to go away.
SMITH, J., joins this opinion.