THE STATE EX REL. LAW OFFICE OF THE MONTGOMERY
COUNTY PUBLIC DEFENDER ET AL., APPELLANTS,
*v.* ROSENCRANS, MAYOR, ET AL., APPELLEES.

[Cite as *State ex rel. Law Office of Montgomery Cty. Pub. Defender v. Rosencrans,* 111 Ohio St.3d 338, 2006-Ohio-5793.]

(No. 2006–0072—Submitted May 23, 2006—Decided November 22, 2006.)

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying a writ of mandamus that sought to compel a mayor and a city to bring all the criminal defendants appearing in mayor's court into an open, public forum, to turn on the available sound-amplification system so that the public can hear the mayor's court proceedings, and to record the mayor's court proceedings. We affirm the judgment.

{¶ 2} The mayor's court for the city of Moraine, Ohio, is held in the council chambers in the city's municipal building. Mayor's court proceedings are governed by the United States and Ohio Constitutions, R.C. Chapter 1905, and the Mayor's Court Education and Procedure Rules. In 2004, over 800 people were incarcerated in the Montgomery County jail as a result of cases originating in the Moraine Mayor's Court, and as of August 2005, that number was 532. The vast majority of these inmates had not been represented by counsel.

{¶ 3} During proceedings in the Moraine Mayor's Court, Mayor Robert Rosencrans and the city prosecutor sit next to each other on an elevated bench and the defendants and defense counsel stand facing the bench. According to Mayor Rosencrans and the city, public seating starts about 22.5 feet from the participants.

{¶ 4} The mayor's court is equipped with a sound system that also records. During city council meetings, the sound system is always on and the meetings are recorded. Conversely, when Mayor Rosencrans conducts court proceedings, he does not turn the sound system on and does not record the proceedings.

{¶ 5} Because Mayor Rosencrans does not activate the sound system, members of the public in the audience cannot hear everything that is said during the proceedings. Mayor Rosencrans justifies his decision not to activate the sound-amplification system upon "the sensitivity of the defendant * * * as to what they are being charged with and not wanting everyone in the courtroom to know what they are being charged with" as well as his conclusion that he is "not required" to turn the system on.

{¶ 6} Mayor Rosencrans also prevented prisoners who appeared in mayor's court from being arraigned in open court. He did so because of public-safety concerns expressed by himself, the city prosecutor, and the police department.

{¶ 7} On December 24, 2003, an attorney with the Law Office of the Public Defender, Montgomery County, Ohio, requested that Mayor Rosencrans provide

sound amplification for and record the mayor's court proceedings. The public defender cited only May.R. 11 in support of the request. On January 13, 2004, Montgomery County Public Defender Glen H. Dewar requested that Mayor Rosencrans conduct proceedings involving all incarcerated persons in open court.

{¶ 8} On March 16, 2004, after Mayor Rosencrans either refused or did not respond to the public defender's requests, appellants, the Law Office of the Montgomery County Public Defender and Public Defender Dewar (collectively, "public defender") filed a petition in the Court of Appeals for Montgomery County for a writ of mandamus to compel appellees, Mayor Rosencrans and the city of Moraine, to (1) "bring all persons appearing in Moraine Mayor's Court into an open, public forum," (2) turn on the sound amplification for the mayor's court proceedings, and (3) record the proceedings of the mayor's court. The latter two requests were premised upon May.R. 11.

{¶ 9} Shortly thereafter, on March 18, 2004, Mayor Rosencrans ended his previous policy, and agreed to hear all mayor's court proceedings, including cases involving incarcerated persons, in open court. Since Mayor Rosencrans permitted bringing incarcerated defendants back into open court, no public-safety problems have occurred.

{¶ 10} Appellees answered the public defender's mandamus petition, and the parties submitted evidence and briefs.

{¶ 11} On December 14, 2005, the court of appeals denied the writ. The court of appeals concluded that the request to compel appellees to bring all persons into open court was moot and that May.R. 11(B)(2) did not require Mayor Rosencrans to turn on the sound-amplification and recording systems during mayor's court proceedings. *State ex rel. Montgomery Cty. Pub. Defender v. Rosencrans,* 2d Dist. No. CA20416, 2005-Ohio-6681, 2005 WL 3454738.

{¶ 12} This cause is now before the court upon the public defender's appeal as of right.

### Mandamus

{¶ 13} The public defender argues that the court of appeals erred in denying the writ. In order to be entitled to a writ of mandamus, the public defender has to establish a clear legal right to have all persons brought before the Moraine Mayor's Court appear in an open, public forum and to have the sound-amplification and recording systems turned on during the proceedings, a clear legal duty on the part of the mayor and the city to do so, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Union Cty. Veterans Serv. Comm. v. Parrott,* 108 Ohio St.3d 302, 2006-Ohio-92, 843 N.E.2d 750, ¶ 8. Because the public defender requests that the mayor and the city perform three distinct actions, these actions are discussed separately.

Bringing All Persons into an Open, Public Forum

{¶ 14} In their answer to the public defender's petition, Mayor Rosencrans and Moraine conceded that they had a duty to conduct all mayor's court proceedings in an open, public forum. Although Mayor Rosencrans had previously prevented prisoners appearing in mayor's court from being arraigned in open court due to public-safety concerns, he stopped this practice shortly after the public defender filed his petition for a writ of mandamus contesting the mayor's practice.

{¶ 15} Because Mayor Rosencrans and Moraine performed the act that the public defender had requested in his claim, the court of appeals held that the claim was moot. "Mandamus will not issue to compel an act that has already been performed." *State ex rel. Madsen v. Foley Jones,* 106 Ohio St.3d 178, 2005-Ohio-4381, 833 N.E.2d 291, ¶ 11. Subsequent performance of the act requested in the mandamus action generally renders the action moot. See, e.g., *State ex rel. Scruggs v. Sadler,* 102 Ohio St.3d 160, 2004-Ohio-2054, 807 N.E.2d 357, ¶ 5; *State ex rel. Frailey v. Wolfe* (2001), 92 Ohio St.3d 320, 321, 750 N.E.2d 164.

{¶ 16} The public defender asserts that his claim is not moot because it is capable of repetition, yet evading review. "This exception [to the general rule of mootness] applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 231, 729 N.E.2d 1182, citing *Spencer v. Kemna* (1998), 523 U.S. 1, 17–18, 118 S.Ct. 978, 140 L.Ed.2d 43.

{¶ 17} The public defender has not established that this exception applies to his request that all prisoners before the Moraine Mayor's Court be arraigned in open court. First, the challenged action is not too short in its duration to be fully litigated before its cessation or expiration. The public defender challenged the mayor's general policy of arraigning incarcerated criminal defendants in a nonpublic place. That general practice was not so short in duration as to necessarily preclude its litigation before it was changed. Second, there is no reasonable expectation that the public defender will be subject to having his incarcerated clients again arraigned in a nonpublic place. The mayor and the city now acknowledge that they have a duty to conduct all mayor's court proceedings in an open, public forum, and the mayor has stopped his practice of preventing prisoners who are being arraigned from appearing in open court.

{¶ 18} The cases the public defender cites in support of his contention that the exception applies are distinguishable. In *State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 175, 586 N.E.2d 101, the court emphasized that "[c]ourtroom closure cases often evade review, since a closure

order usually expires before an appellate court can consider it." See, also, *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 28 OBR 472, 504 N.E.2d 37. The public defender in this case is not challenging a solitary closure order in a criminal case that has since expired but is instead contesting Mayor Rosencrans's previous practice of arraigning incarcerated criminal defendants in a nonpublic forum.

{¶ 19} Similarly, in *State ex rel. Dispatch Printing Co. v. Louden* (2001), 91 Ohio St.3d 61, 741 N.E.2d 517, which was cited by the public defender to support his claim that his request was not moot, a judge who had closed a juvenile detention hearing had a 20-year history of closing such proceedings. There was a reasonable expectation that without the requested writ, the judge would again close the detention proceedings because the judge continued to assert that the proceedings should be presumed closed. Id. at 64, 741 N.E.2d 517. Mayor Rosencrans, however, does not have a comparable lengthy history of closing arraignments and now concedes that he has a duty to keep these proceedings open.

{¶ 20} Therefore, the court of appeals did not commit error by denying the public defender's first claim based on mootness.

### Activating the Sound–Amplification System: May.R. 11(B)(2)

{¶ 21} The public defender also sought a writ of mandamus to compel Mayor Rosencrans and the city of Moraine to turn on the available sound-amplification system so that the public can hear the mayor's court proceedings.

{¶ 22} The public defender bases his claim upon May.R. 11(B)(2), which provides that in mayor's court proceedings, *"[a]ll participants must be able to hear and be heard. If the room acoustics are unsatisfactory, an efficient public address system shall be provided."* (Emphasis added.) The public defender claims that the term "participants" includes the general public.

{¶ 23} To interpret court rules, this court applies general principles of statutory construction. See, e.g., *State ex rel. Potts v. Comm. on Continuing Legal Edn.* (2001), 93 Ohio St.3d 452, 456, 755 N.E.2d 886; *Thomas v. Freeman* (1997), 79 Ohio St.3d 221, 224, 680 N.E.2d 997. Therefore, we must read undefined words or phrases in context and then construe them according to rules of grammar and common usage. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 35.

{¶ 24} "Participant" is defined as "one that takes part or shares in something with others." Webster's Third New International Dictionary (2002) 1646. The language of May.R. 11 indicates that the word "participant" is more restrictive than the word "public." See, e.g., May.R. 11(C)(2) ("Litigants and other members of the public shall refrain from talking during the proceeding, except when

addressing the mayor, testifying, or conferring with counsel. All persons participating in the proceeding shall refrain from using foul or abusive language"). As the court of appeals concluded, "it is more logical to read the term 'participant' as a reference to those who take an active role in the outcome of the trial such as the parties, counsel, Mayor, Mayor's staff and any witnesses who actually 'take part' in the proceedings." 2005-Ohio-6681, 2005 WL 3454738, ¶ 20.

{¶ 25} Moreover, as the mayor and the city persuasively assert, adopting the public defender's interpretation that "participants," as used in May.R. 11(B)(2), includes the general public would lead to the unreasonable result that members of the general public would have an unfettered right to be heard in mayor's court proceedings in addition to the right to hear those proceedings. See, e.g., *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 28 (courts construe a statute and rule to avoid unreasonable or absurd results). Manifestly, members of the general public in mayor's court do not have the right to speak in mayor's court proceedings in which they are not involved.

{¶ 26} Insofar as the public defender also argues that constitutional provisions require May.R. 11(B)(2) to be construed to require activation of the sound system, the public defender did not rely on constitutional arguments in either his December 23, 2004 letter or in his petition for mandamus. The court of appeals thus did not err in resolving the public defender's sound-amplification claim without discussing any constitutional arguments. See, e.g., *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 31 (relator waived claims based upon R.C. 121.22 and a municipal charter because he did not raise them before the court of appeals); *State ex rel. R.W. Sidley, Inc. v. Crawford*, 100 Ohio St.3d 113, 2003-Ohio-5101, 796 N.E.2d 929, ¶ 32 (appellant waived claims in an appeal from the denial of extraordinary writs "by failing to plead them in its complaint, amend its complaint to include them, or try them with the consent of other parties").

{¶ 27} The lack of a public-address system does not violate any constitutional right. In *United States v. Griffin* (C.A.5, 1976), 527 F.2d 434, 436, the United States Court of Appeals for the Fifth Circuit held that a defective public-address system did not violate a criminal defendant's constitutional right to a public trial:

{¶ 28} "Griffin also argues that he was denied his constitutional right to a public trial and confrontation of witnesses against him by virtue of the defective public address system. He claims that the court and jury were unable to hear the government's witnesses. The record does not support this assertion. On the contrary, the record shows that the court provided that the necessary participants heard the testimony of the witnesses and all other proceedings. No error was committed."

{¶ 29} Like the criminal defendant in *Griffin,* the participants in the Moraine Mayor's Court proceedings are able to hear the proceedings, as required by May.R. 11(B)(2). Therefore, based upon the plain language of the rule, the court of appeals did not err in holding that there is no clear legal duty on the part of Mayor Rosencrans and the city of Moraine to turn on the sound-amplification system during mayor's court proceedings.

### Recording Mayor's Court Proceedings: May.R. 11(B)(2)

{¶ 30} In his final proposition of law, the public defender asserts that the court of appeals erred in denying his claim for a writ of mandamus to compel Mayor Rosencrans and the city of Moraine to record mayor's court proceedings. In the public defender's December 24, 2003 written request and the March 16, 2004 mandamus petition, he cited only May.R. 11 in support of this claim.

{¶ 31} As the court of appeals correctly concluded, however, May.R. 11(B)(2) does not require that mayor's court proceedings be recorded. 2005-Ohio-6681, 2005 WL 3454738, ¶ 25. May.R. 11(B)(2) simply provides that "[a]n audio system to record mayor's court proceedings should be provided and tapes of proceedings *should* be maintained in accordance with established records retention schedules." (Emphasis added.) The word "should" imposes no duty on respondents to record mayor's court proceedings. See, e.g., *Dunlap v. W.L. Logan Trucking Co.,* 161 Ohio App.3d 51, 2005-Ohio-2386, 829 N.E.2d 356, ¶ 16 (the word "shall" establishes a mandatory duty, but the word "should" requires the use of discretion and judgment); *Lodl v. Progressive N. Ins.* (2002), 253 Wis.2d 323, 646 N.W.2d 314, ¶ 30 (a policy regarding traffic direction and control was cast in discretionary terms when it used the word "should" throughout); *Stewart v. Chevron Chem. Co.* (1988), 111 Wash.2d 609, 613, 762 P.2d 1143 (when a layoff policy states that management "should" consider performance, experience, and length of service, no obligation is created for management to consider all three factors; "should" may be interpreted as discretionary); cf. *State ex rel. Grinnell Communications Corp. v. Love* (1980), 62 Ohio St.2d 399, 400-401, 16 O.O.3d 434, 406 N.E.2d 809 (use of word "should" in Code of Judicial Conduct imposes mandatory standards in light of introductory paragraph of code specifying that the canons and accompanying text establish mandatory standards).

{¶ 32} The public defender further claims that the Rules of Criminal Procedure impose a duty on the mayor and the city to record certain mayor's court proceedings. But the public defender never based his written request or the mandamus petition on these rules, instead choosing to rely solely on May.R. 11. The public defender also did not amend his complaint to raise this claim. Therefore, the public defender waived consideration of this claim on appeal. See *Musial,* 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 31; *Sidley,* 100 Ohio St.3d 113, 2003-Ohio-5101, 796 N.E.2d 929, ¶ 32.

## Conclusion

{¶ 33} Based on the foregoing, we affirm the court of appeals' denial of the public defender's first claim for a writ of mandamus based on mootness, and affirm the court of appeals' denial of the public defender's remaining mandamus claims, which sought to compel the mayor and the city to activate the available sound-amplification system during mayor's court proceedings and to record those proceedings, because May.R. 11 imposes no duty on the mayor and the city to do so.

Judgment affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

PFEIFER, O'CONNOR and LANZINGER, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 34} Admittedly, the age-old puzzler "If a tree falls in the forest and no one is around, does it make a sound?" defies an easy answer. However, the question facing us today, "If a public trial doesn't make a sound, is it still a public trial?" is not so vexing. It demands a simple answer: No. Accordingly, I dissent.

{¶ 35} The First Amendment to the United States Constitution, in conjunction with the Fourteenth Amendment, prohibits governments from "abridging the freedom of speech, or of the press." See, also, Section 11, Article I, Ohio Constitution ("no law shall be passed to restrain or abridge the liberty of speech, or of the press"). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." See, also, Section 10, Article I, Ohio Constitution ("In any trial, in any court, the party accused shall be allowed to * * * have * * * a speedy public trial"). Under Section 16, Article I of the Ohio Constitution, "[a]ll courts shall be open." "The right to a public trial is an important, fundamental constitutional guarantee of both the United States and Ohio Constitutions." *State v. Lane* (1979), 60 Ohio St.2d 112, 119, 14 O.O.3d 342, 397 N.E.2d 1338, citing the Sixth Amendment to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

{¶ 36} In recent years, this court has moved toward complete openness of juvenile proceedings in cases where the media has sought access to the proceedings. In those cases, this court has trumpeted the necessity of public access:

{¶ 37} "The Free Speech and Free Press Clauses of the First Amendment to the United States Constitution, the analogous provisions of Section 11, Article I of the Ohio Constitution, and the 'open courts' provision of Section 16, Article I of the Ohio Constitution create a qualified right of public access to court proceed-

ings that have historically been open to the public and in which public access plays a significantly positive role." *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juvenile Div.* (2000), 90 Ohio St.3d 79, 82, 734 N.E.2d 1214. See, also, *State ex rel. Plain Dealer Publishing Co. v. Floyd,* 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35.

{¶ 38} It seems incongruous that this court should open up traditionally private juvenile proceedings to the media while at the same time allowing the mayor's court of the city of Moraine to maintain its Kafkaesque custom of trial by mime.

{¶ 39} If a proceeding meets the "tests of experience and logic" by being the type of proceeding that has historically been open to the public and in which public access has a significantly positive effect, the proceeding is presumed open and may be closed only if the court finds that closure is essential to preserve higher values and is narrowly tailored to serve an overriding interest. *Press–Ent. Co. v. Riverside Cty. Superior Court* (1986), 478 U.S. 1, 9, 106 S.Ct. 2735, 92 L.Ed.2d 1; *State ex rel. Beacon Journal Publishing Co. v. Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 17. Thus, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia* (1984), 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31.

{¶ 40} Mayor's courts in Ohio "are authorized to try a limited range of offenses, including ordinance violations and traffic offenses." 2 Katz, Giannelli, Blair & Lipton, Baldwin's Ohio Practice Criminal Law (2d Ed.2003) 426–427, Section 62:13; R.C. 1905.01. The qualified constitutional right of access and its presumption of openness apply to most criminal proceedings. *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juvenile Div.* (2000), 90 Ohio St.3d 79, 82, 734 N.E.2d 1214, citing *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 420–421, 28 OBR 472, 504 N.E.2d 37.

{¶ 41} Mayor Rosencrans and Moraine concede that—in accordance with the United States and Ohio Constitutions—they have a duty to conduct all mayor's court proceedings in an open, public forum. At issue, however, is whether they violated this constitutional duty by refusing to turn on an available sound-amplification system during mayor's court proceedings to allow the public in the courtroom to hear the proceedings. In effect, the mayor and the city assert that there is no right to *hear* the proceedings, only to *see* them.

{¶ 42} The mayor and the city are mistaken. The constitutional right of access to criminal proceedings includes the right "to *hear,* see, and communicate observations concerning them." (Emphasis added.) *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 576, 100 S.Ct. 2814, 65 L.Ed.2d 973; see,

also, *United States v. Alcantara* (C.A.2, 2005), 396 F.3d 189, 197, quoting *United States v. Santarelli* (C.A.11, 1984), 729 F.2d 1388, 1390 (" '[T]he public has a First Amendment right to see and *hear* that which is admitted in evidence in a public sentencing hearing' " [emphasis added] ); *United States v. Beckham* (C.A.6, 1986), 789 F.2d 401, 413 ("The policies underlying the constitutional right to attend a criminal trial are stronger. The right to attend the trial, to see and *hear* the events that transpire and to publish these events, is a right that is fundamental to the protection of express constitutional guarantees in the First and Sixth Amendments" [emphasis added] ); *Associated Press v. Bost* (Miss.1995), 656 So.2d 113, 117 ("Under the First Amendment, the press and public are guaranteed a right of access to public trials in order to gather information, and report what they see and *hear* " [emphasis added] ); *Raper v. Berrier* (1957), 246 N.C. 193, 195, 97 S.E.2d 782 ("The public * * * [is] entitled to see and *hear* what goes on in the courts" [emphasis added] ).

{¶ 43} In *People v. Ramey* (1992), 237 Ill.App.3d 1001, 606 N.E.2d 39, an Illinois appellate court held that a trial court violated a criminal defendant's Sixth Amendment right to a public trial when the court turned off the microphones of the courtroom's public-address system during closing arguments without making the requisite findings to overcome the presumption of openness:

{¶ 44} "[I]t cannot be successfully maintained that in the case at bar a closure, *qua* closure, did not occur, even though the microphones were turned off only during closing arguments. The issue, then, becomes one of whether the trial court abused its discretion in shutting off the auditory part of the proceedings to the public portion of the courtroom during closing arguments.

{¶ 45} " * * *

{¶ 46} "We hold that the trial court here abused its discretion in failing to meet the elements set forth in *Press–Enterprise*, for, assuming, without deciding, that an overriding interest existed, namely, the tainting of a venire from which a jury would be picked to hear the next trial, the closure was broader than necessary to protect this interest. As the record now shows, not only the venirepersons, but also the members of defendant's family were excluded from the courtroom and were thus prevented from hearing closing arguments. Accordingly, we conclude that on the facts of this case, the 'presumption of openness' * * * was not overcome, and defendant was improperly denied his constitutional right to a public trial." Id. at 1005, 606 N.E.2d 39.

{¶ 47} The mayor's actions here in refusing to activate the available sound-amplification system for *all proceedings* in mayor's court was much more egregious than the impermissible closure caused by turning the sound system off during the closing arguments in *Ramey*. The specified reasons by the mayor for doing so—to spare criminal defendants public embarrassment and because he is

not required to do so under May.R. 11—are insufficient to overcome the constitutional presumption of openness of mayor's court proceedings. Cf. *Globe Newspaper Co. v. Norfolk Cty. Superior Court* (1982), 457 U.S. 596, 607–608, 102 S.Ct. 2613, 73 L.Ed.2d 248 (state interest of preventing further trauma and embarrassment to alleged minor victims of certain sexual offenses by closing criminal trial during victim's testimony does not justify a mandatory closure rule without regard to unique facts of each case).

{¶ 48} The mayor and the city erroneously assert that the "open courts doctrine does not give the public a right to hear and be heard." It is axiomatic that there is a constitutional right of the public *to hear* criminal proceedings. See *Richmond, Alcantara, Santarelli,* and *Beckham,* supra. This right exists regardless of whether there is any additional right for the public "to be heard." Consequently, the constitutional right is broader than any comparable right under May.R. 11.

{¶ 49} As the court recognized in *Lane,* 60 Ohio St.2d at 119, 14 O.O.3d 342, 397 N.E.2d 1338, the "guarantee of a public trial is a cornerstone of our democracy which should not be circumvented unless there are extreme overriding circumstances." Policy reasons supporting open, public trials include the following: "(1) A public trial serves as an effective restraint upon a possible abuse of power * * *; (2) a public trial assures traditional trustworthiness by inducing fear of testimony falsely given * * *; (3) a public trial makes the proceedings known to a possible material witness who might otherwise be unknown to the parties * * *; and (4) a public trial allows the public to learn about the functioning of their government." Id.; see, also, *Waller,* 467 U.S. at 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 ("In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury").

{¶ 50} The mayor's refusal to activate the available sound-amplification system contravenes these purposes. Without the public being able to hear the proceedings, the mayor's court proceedings are not as effective in checking potential abuse of power, assuring testimonial veracity, providing access to possible material witnesses, or imparting knowledge of government functioning.

{¶ 51} Therefore, because the mayor did not articulate findings sufficient to overcome the constitutional presumption of openness, he erred in closing mayor's court proceedings to the general public by refusing to activate the sound-amplification system. The public defender is entitled to a writ of mandamus to compel the mayor and the city to perform this constitutional duty.

O'CONNOR and LANZINGER, JJ., concur in the foregoing opinion.

Glen H. Dewar, Montgomery County Public Defender, and Janet R. Sorrell, Assistant Public Defender, for appellants.

Bieser, Greer & Landis, L.L.P., David C. Greer, and Jennifer L. Stueve; and Surdyk, Dowd & Turner Co., L.P.A., and Robert J. Surdyk, for appellees.