Kennedy, J., dissenting.
{¶ 30} When an offender violates the terms of his or her postrelease control by committing a new felony, the offender may be prosecuted for the new felony and judicially sanctioned with a prison term for the postrelease-control violation.
*774 R.C. 2929.141(A). At issue in this case is whether Crim.R. 11(C)(2)(a) requires a trial court taking a guilty plea to the new felony to advise the accused that an additional, consecutive sentence for the postrelease-control violation may be imposed.
{¶ 31} A trial court may accept a plea only if it is knowingly, intelligently, and voluntarily made, and relevant here, Crim.R. 11(C)(2)(a) directs the court to inform the accused of the maximum penalty for each offense charged that will be *164 resolved by the plea. However, a postrelease-control violation does not result in a criminal "charge" because it is not a new criminal offense and involves only a possible judicial sanction separate from the punishment that may be imposed for the new felony. Therefore, because the trial court is not required to advise the accused about the judicial sanction that may be imposed pursuant to R.C. 2929.141(A), I dissent and would answer the certified question in the negative and reverse the judgment of the Second District Court of Appeals.
Facts and Procedural History
{¶ 32} Appellee, Dustin Bishop, was indicted on two counts: possession of heroin, a fifth-degree felony, and possession of drug paraphernalia, a misdemeanor. Appellant, the state of Ohio, and Bishop entered into a plea agreement in which he agreed to plead guilty to heroin possession in exchange for the dismissal of the drug-paraphernalia count.
{¶ 33} At the plea hearing, the trial court informed Bishop that the fifth-degree felony count of heroin possession carried a maximum penalty of 12 months in prison and a $2,500 fine. It also advised him that he could be placed on community control and that if he violated its terms, he could be imprisoned for 12 months. The court further told him:
Upon finishing any prison sentence, you may be placed on what's called post-release control or PRC wherein you'd be under the supervision of the parole board for three years. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: If you violate any of the terms of your release from prison or you violate any law while you're under the supervision of the parole board then the parole board can add onto your sentence nine months for each individual violation up to a total of 50 percent of the stated prison term for multiple violations.
If your violation is a felony, you could receive from the Court a prison term of either one year or whatever time is remaining on the post-release control, whichever is the longer time, plus you could be prosecuted and sentenced for the new felony, itself.
Also, for any violations, the parole board could extend the length of the post-release control or impose other more restrictive sanctions upon you.
I mentioned there, I believe, three items without giving you a chance to respond right away. Do you understand all that?
THE DEFENDANT: Yes.
*165 (Capitalization sic.)
{¶ 34} Neither Bishop nor defense counsel informed the trial court that Bishop was on postrelease control when he committed the new felony, and there was no objection to the court's failure to inform Bishop that R.C. 2929.141(A) might subject him to a consecutive prison sentence for the postrelease-control violation. After being *775 informed of the constitutional rights he would be waiving, Bishop pleaded guilty to heroin possession. The court ordered a presentence investigation and scheduled a sentencing hearing.
{¶ 35} The presentence-investigation report contains the earliest mention in the record of the fact that Bishop was on postrelease control when he committed the new felony. At sentencing, the trial court noted Bishop's significant criminal history (including 14 prior felony convictions) and that he was on postrelease control at the time of his newest offense, and it imposed a 12-month sentence to be served consecutively with a 9-month sentence for heroin possession. Neither Bishop nor defense counsel objected, and Bishop did not move to withdraw his plea due to a surprise at sentencing.
{¶ 36} Rather, Bishop challenged the validity of his plea for the first time on appeal, asserting that he had not knowingly, intelligently, and voluntarily entered the plea because the trial court had not informed him that R.C. 2929.141 permitted the court to terminate his postrelease control and order him to serve consecutive prison terms for the new felony and the violation of the terms of his postrelease control. The court of appeals agreed that the plea was invalid because of the lack of this advisement, and it vacated the guilty plea and remanded the matter for further proceedings. 2017-Ohio-8332, ¶ 7, 9. We accepted the state's discretionary appeal and recognized that the Second District's decision conflicted with decisions of the Fifth and Eighth District Courts of Appeals. 152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 877.
{¶ 37} The sole issue presented in this case is whether Crim.R. 11(C)(2)(a) requires a trial court accepting a guilty plea to a felony to inform the accused of a possible judicial sanction that could be imposed pursuant to R.C. 2929.141(A) for a violation of the terms of postrelease control.
Law and Analysis
{¶ 38} Crim.R. 11(C)(2) provides:
In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
*166 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
{¶ 39} "To interpret court rules, this court applies general principles of statutory construction. * * * Therefore, we must read undefined words or phrases in context and then construe them according to rules of grammar and common usage." State ex rel. Law Office of Montgomery Cty. Pub. Defender v. Rosencrans , 111 Ohio St.3d 338, 2006-Ohio-5793, 856 N.E.2d 250, ¶ 23. We must give effect to the words used in the rule, refraining from inserting or deleting words. Cleveland Elec. Illum. Co. v. Cleveland , 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988). If the language of a rule is plain and unambiguous and conveys a clear and definite meaning, then there is no need for this court to resort to the rules of interpretation; rather, we apply the rule as written. State ex rel. Potts v. Comm. on Continuing Legal Edn. , 93 Ohio St.3d 452, 456, 755 N.E.2d 886 (2001).
*776 {¶ 40} The language of Crim.R. 11(C)(2)(a) is plain and unambiguous. Crim.R. 11(C)(2)(a) requires a trial court accepting a guilty "plea" from a defendant to ensure that the defendant understands the "charges" and the "maximum penalty involved." The words "plea," "charges," and "maximum penalty" are not defined in either the Criminal Rules or the Revised Code, but they have common, everyday meanings that we can apply.
{¶ 41} A "plea" is "[a]n accused person's response of 'guilty,' 'not guilty,' or 'no contest' to a criminal charge." Black's Law Dictionary 1337 (10th Ed.2014). A "charge" is "[a] formal accusation of an offense as a preliminary step to prosecution." Id. at 282. The term "maximum penalty" refers to "[t]he heaviest punishment permitted by law." Id. at 1314.
{¶ 42} Accordingly, the plea is the defendant's response to a charge filed alleging an offense, and the maximum penalty is the heaviest punishment prescribed by statute for that offense. Crim.R. 11(C)(2)(a) therefore requires the trial court to advise the defendant of the maximum penalty for each of the charges that the accused is resolving with the plea. Here, that means that the trial court was required to inform Bishop that he could be sentenced to up to 12 months in prison and a $2,500 fine for possession of heroin, and the trial court did that in the plea colloquy.
{¶ 43} Our decision in State v. Johnson , 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), supports this plain reading of the rule. In that case, the accused had agreed to plead guilty to aggravated robbery, robbery, and forgery, and in its plea colloquy, the trial court informed him of the maximum possible penalty for each individual charge without advising him that the court had authority to run *167 the sentences consecutively. Id. at 130-131, 532 N.E.2d 1295. The accused pleaded guilty, the court accepted the pleas, and it imposed consecutive sentences. Id. at 131, 532 N.E.2d 1295. The Second District Court of Appeals reversed and invalidated the pleas, holding that the trial court had failed to advise the accused "as to the maximum sentence possible for such violations because the trial court failed to inform him that the sentences may be imposed to run consecutively, rather than concurrently." Id. at 131-132, 532 N.E.2d 1295.
{¶ 44} We reversed, concluding that the trial court's application of Crim.R. 11(C)(2)(a) was not prejudicial error. Id. at 134-135, 532 N.E.2d 1295. We explained:
Upon its face the rule speaks in the singular. The term "the charge" indicates a single and individual criminal charge. So, too, does "the plea" refer to "a plea" which the court "shall not accept" until the dictates of the rule have been observed. Consequently, the term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered. It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.
(Emphasis added.) Id. at 133, 532 N.E.2d 1295.
{¶ 45} We further reasoned that
*777 Crim.R. 11 applies only to the entry and acceptance of the plea. It has no relevance to the exercise of the trial court's sentencing discretion at that stage other than directing the court to proceed with or impose sentencing. Thus, it can hardly be said that the rule imposes upon a trial judge a duty to explain what particular matters he may, at a later date, determine are significant to the exercise of his discretion. Moreover, explaining definitions of basic terms and calculating potential sentences are matters which are within the purview of legal representation, and of which even minimally competent trial counsel are capable.
(Emphasis added.) Id. at 134, 532 N.E.2d 1295.
{¶ 46} Johnson therefore stands for the proposition that the trial court is required to inform the accused of the maximum penalty for each charged offense that will be resolved by the plea.
*168 {¶ 47} The lead opinion correctly notes that since we decided Johnson , Crim.R. 11(C)(2)(a) has been amended to require the trial court to ensure that the accused understands the nature of the "charges" and the maximum penalty involved. However, we amended the rule in 1998-almost a decade after we decided Johnson -"in light of changes in terminology used in the criminal law of Ohio effective July 1, 1996," by Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2"), and the staff comment to the amendment does not indicate that making the word "charge" plural was intended to be a substantive change. 83 Ohio St.3d xciii, cxi. We do not make significant revisions to our procedural rules cryptically, and we have never held that our holding in Johnson has been abrogated by the amended rule. Ohio appellate courts continue to follow Johnson and hold that Crim.R. 11(C)(2)(a) does not require the trial court to advise a defendant during a plea colloquy of the possibility of consecutive sentencing. E.g. , State v. Dansby-East , 2016-Ohio-202, 57 N.E.3d 450, ¶ 16-17 (8th Dist.) ; State v. Gabel , 6th Dist. Sandusky Nos. S-14-038, S-14-042, S-14-043, and S-14-045, 2015-Ohio-2803, 2015 WL 4171049, ¶ 13-14 ; State v. Mack , 1st Dist. Hamilton No. C-140054, 2015-Ohio-1430, 2015 WL 1737552, ¶ 25.
{¶ 48} Importantly, the judicial sanction authorized by R.C. 2929.141 was not enacted by the General Assembly until 2002, so it could not have been contemplated by the amendment to Crim.R. 11(C)(2)(a). See Am.Sub.H.B. No. 327, 149 Ohio Laws IV, 7536, 7576, 7626. But in any case, the amendment does not support the lead opinion's conclusion that the trial court is required to inform the defendant about penalties that may result from the guilty plea but that are not part of the "maximum penalty involved" for the "charges" resolved by the "plea." Simply put, there is no "charge" brought for a violation of the terms of postrelease control, because the General Assembly has not made a postrelease-control violation a separate crime as it has, for example, in criminalizing the violation of a protective order. See R.C. 2919.27. This conclusion is dictated by an understanding of how postrelease control works.
{¶ 49} In 1996, the General Assembly enacted the postrelease-control statute as part of a comprehensive revision of Ohio's criminal sentencing scheme, S.B. 2, and its companion bill, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part VI, 10752 ("S.B. 269"). As we explained in Woods v. Telb , 89 Ohio St.3d 504, 508, 733 N.E.2d 1103 (2000), our first decision to address the postrelease-control *778 statute, S.B. 2 and S.B. 269 "chang[ed] the landscape of Ohio's sentencing system" to provide "truth in sentencing," primarily accomplished by eliminating both indefinite sentences and parole and replacing them with definite sentences and postrelease control. The legislature removed the Adult Parole Board's authority to determine how long an offender stays in prison and instead provided that offenders are subject to mandatory and discretionary terms of postrelease control that commence upon release from imprisonment. *169 {¶ 50} Postrelease control is a "period of supervision by the adult parole authority after a prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised Code." R.C. 2967.01(N). The parole board has authority to impose "conditions of release under a post-release control sanction that the board or court considers appropriate, and the conditions of release may include [a] community residential sanction, community nonresidential sanction, or financial sanction." R.C. 2967.28(D)(1).
{¶ 51} An offender who is released on postrelease control is under the general jurisdiction of the Adult Parole Authority and supervised by parole officers as if the offender had been placed on parole. R.C. 2967.28(F)(1). If the Adult Parole Authority determines that an offender has violated a condition of postrelease control, it may impose a more restrictive condition (but not a residential sanction that includes a prison term) or it may refer the matter for a hearing before the parole board, which has the authority to impose a prison term for a postrelease-control violation. R.C. 2967.28(F)(2) and (3). Importantly, courts are not involved in determining whether a violation occurred or what the sanction should be. The sanction, even if a prison term, is administratively imposed.
{¶ 52} However, if an offender violates the terms of postrelease control by committing a new felony, upon the conviction or plea of guilty for that offense, the court may terminate postrelease control and impose either community-control sanctions or a prison term for the postrelease-control violation for the greater of 12 months or the time remaining to be served on postrelease control. R.C. 2929.141(A). If a prison term is imposed, it is to be served consecutively to the sentence for the new felony but must be reduced by any prison term administratively imposed by the parole board. R.C. 2929.141(A)(1).
{¶ 53} R.C. 2929.141(A)(1) expressly distinguishes between the penalty imposed for a new felony and the sanction imposed for a postrelease-control violation, stating that the court may impose a prison term for the postrelease-control violation "[i]n addition to any prison term for the new felony." Our decisions have long recognized this distinction as well.
{¶ 54} In Woods , we rejected the argument that permitting the Adult Parole Board to impose postrelease control on offenders violated the separation-of-powers doctrine by allowing the executive branch to exercise judicial authority, exactly because "post-release control is part of the original judicially imposed sentence" and because postrelease-control sanctions are "aimed at behavior modification in the attempt to reintegrate the offender safely into the community, not mere punishment for an additional crime." 89 Ohio St.3d at 512, 733 N.E.2d 1103.
*170 {¶ 55} Similarly, in State v. Martello , we held that it does not offend the double-jeopardy protections of the Ohio and United States Constitutions to prosecute an offender who was sanctioned for violating the terms of postrelease control for the same conduct that was the reason for the sanction.
*779 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 1. We explained that "the General Assembly has indicated its clear intent that the prison term imposed for the violation of postrelease control is a reinstatement of part of the original sentence for violating the conditions of supervision, and is not meant to be a separate criminal punishment." Id. at ¶ 19. We continued: "[J]eopardy does not attach when a defendant receives a term of incarceration for the violation of conditions of postrelease control. Such a term of incarceration is attributable to the original sentence and is not a 'criminal punishment' for Double Jeopardy Clause purposes * * *." Id. at ¶ 26.
{¶ 56} Accordingly, as the statutory scheme demonstrates, a violation of the terms of postrelease control is not separately charged when the accused commits a new felony, and it is not part of the charge resolved by the accused's guilty plea resolving the new felony charged in the case. Nor is any sanction imposed for the postrelease-control violation part of the "maximum penalty involved," because it is not part of a new sentence that may be imposed for a new felony but, rather, is part of the original sentence that imposed postrelease control.
{¶ 57} Nonetheless, the lead opinion reasons that a prison term imposed pursuant to R.C. 2929.141(A) "cannot stand alone" and is "inextricably intertwined" with the sentence imposed for the new felony that constitutes the postrelease-control violation. Lead opinion at ¶ 17. It is unclear whether the justices joining the lead opinion view the postrelease-control violation as a "charge" or whether they view the judicial sanction imposed as part of the maximum penalty involved. But either way, the lead opinion's analysis cannot be squared with the language of the postrelease-control statute or our decisions recognizing that a sanction for a postrelease-control violation is not punishment for the commission of a new offense. It is true that the postrelease-control violation is connected to the new felony, but that is only because the guilty plea or conviction is the form of proof that the General Assembly has specified for showing that an offender violated the terms of his or her postrelease control by committing a felony. Standing alone, that does not make the violation any part of the charge resolved by the plea or make the sanction any part of the punishment for the conviction.
{¶ 58} And as the lead opinion notes, at the time of the plea, there was only a "potential R.C. 2929.141(A) sentence." Id. at ¶ 17. This language implies that a Crim.R. 11(C)(2)(a) advisement is required for any "possible" or "potential" sanction that may be imposed as a collateral consequence of pleading guilty to a *171 felony. But as we recognized in Johnson , Crim.R. 11(C)(2)(a) simply does not impose any duty on the trial court to inform the accused about its sentencing discretion. 40 Ohio St.3d at 134, 532 N.E.2d 1295. Rather, calculating potential sentences and informing the accused of the collateral consequences of a conviction are matters within the purview of legal representation. It is incumbent on defense counsel to know that the client committed a felony while on postrelease control, and an accused's guilty plea to an offense without knowing the legal consequences that may result might raise an issue of ineffective assistance of counsel but is not invalid.
{¶ 59} Lastly, the lead opinion fails to appreciate the logical consequences of this court's judgment today. Its reasoning applies equally to an offender who violates community-control sanctions by committing a new offense. Although Crim.R. 11(C)(2) does not apply to community-control revocation proceedings, e.g. , *780 State v. Mayle , 2017-Ohio-8942, 101 N.E.3d 490, ¶ 13-14 (11th Dist.) (citing cases), the possible imposition of a sentence for an offender's violation of the terms of his or her probation is "inextricably intertwined" with the commission of the new offense that constitutes the probation violation. Following the lead opinion's logic, the trial court's failure to advise the defendant that a probation violation could result in the imposition of a sentence served consecutively to the sentence for the new offense would likewise be a complete failure to comply with Crim.R. 11(C)(2)(a), invalidating the plea. See generally R.C. 2929.25(A)(3)(c) ; State v. Jones , 2017-Ohio-943, 86 N.E.3d 821, ¶ 19 (7th Dist.) (upholding consecutive sentences for multiple probation violations). We have never interpreted Crim.R. 11(C)(2)(a) in this manner, and we should not do so today.
{¶ 60} More fundamentally, for more than a decade, we have grappled with case after case addressing the consequences of a trial court's failure to properly impose postrelease control, debating whether the resulting sentence is void or voidable. See State v. Jordan , 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23 (holding that a trial court's failure to properly impose a statutorily mandated term of postrelease control renders the sentence contrary to law and void); State v. Bezak , 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 12-13 (explaining that a void sentence is a nullity and a de novo sentencing hearing therefore is required to correct it); State v. Fischer , 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 17, 36 (overruling Bezak , holding that the improper imposition of postrelease control does not affect the valid parts of the conviction and sentence, and stating that resentencing is limited to properly imposing postrelease control); State v. Billiter , 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 12 (allowing an offender to challenge an escape conviction by collaterally attacking the imposition of postrelease control); State v. Gordon , 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 12 ( R.C. 2929.19(B)(2)(e) does not require the trial *172 court at sentencing to advise an offender of the judicial sanction authorized by R.C. 2929.141(A) for committing a new felony while on postrelease control).
{¶ 61} This court's judgment today sparks a new debate by creating a new form of postrelease-control error on par with these cases. Courts of this state have held that a guilty plea that was not knowing, intelligent, and voluntary was obtained in violation of due process and is "void." E.g. , State v. Gheen , 7th Dist. Belmont No. 17 BE 0023, 2018-Ohio-1924, 2018 WL 2246947, ¶ 9, citing Boykin v. Alabama , 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ; State v. Miller , 8th Dist. Cuyahoga No. 102848, 2015-Ohio-4688, 2015 WL 7078619, ¶ 5 ; State v. Davis , 2d Dist. Montgomery No. 24927, 2012-Ohio-4745, 2012 WL 4846991, ¶ 4. According to the lead opinion, an accused's plea is not knowing, intelligent, and voluntary if he or she is not informed that the trial court can impose a prison term for a violation of the terms of postrelease control when the accused pleads guilty to a felony that also constitutes the violation. Such a plea is presumed invalid, and no showing of prejudice is needed; that is, it is void.
{¶ 62} However, during the plea hearing, the trial court generally will not know that an offender was on postrelease control at the time of the offense unless the offender or defense counsel volunteers that information; for example, that fact does not appear in this record until the filing of the presentence-investigation report. But if the court does not know that the R.C. 2929.141(A) judicial sanction is in play, it has no reason to give the advisement required by this court's judgment today. The *781 court's judgment therefore brings the validity of countless guilty pleas into question, regardless of whether the accused was prejudiced by any error. It also gives defendants a perverse incentive to conceal the fact that they were on postrelease control when they committed their new offense so that they may "wait and see" what sentence is imposed and then raise the issue like a rabbit from the hat in the court of appeals. Our decisions should not countenance such gamesmanship, but this court's judgment today makes that a winning strategy.
Conclusion
{¶ 63} The General Assembly has enacted a clear-cut statutory scheme of supervision of offenders reentering society after a term of incarceration. It made policy choices by providing that a violation of postrelease control is not a crime and by granting trial courts discretion in deciding whether to impose a prison term as a sanction for that violation. Rather than second-guessing these policy choices in the guise of interpreting a court rule, we should leave the policymaking to the General Assembly, the sole arbiter of public policy.
{¶ 64} Crim.R. 11(C)(2)(a) advisements were never intended for nonexistent criminal offenses that cannot be charged or for a potential penalty that cannot be known at the time of a plea. Rather, the trial court's duty in accepting a guilty *173 plea is to ensure that the accused understands the nature of the charges to be resolved by the plea and the maximum penalty that may be imposed on each of those charges. Because a violation of the terms of postrelease control is not a new charge and because the judicial sanction imposed for the violation is not a punishment imposed on the guilty plea to an offense, Bishop's plea hearing complied with Crim.R. 11(C)(2)(a).
{¶ 65} For these reasons, I would answer the certified question in the negative and reverse the judgment of the Second District Court of Appeals.